**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0610n.06
Filed: October 10, 2008

**No. 07-3174**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| V. | ) | OHIO, AT COLUMBUS |
| | ) | |
| | ) | |
| MARK ANDREW NELSON, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

COLE and GIBBONS, Circuit Judges; FORESTER, Senior District Judge.[*]

KARL S. FORESTER, Senior District Judge. This is an appeal of the district court's sentence of the defendant-appellant, Mark Andrew Nelson. Nelson pled guilty to false acquisition of a firearm in violation of 18 U.S.C. § 924(a)(2) pursuant to a plea agreement. The district court subsequently sentenced him to 120 months imprisonment, two years of supervised release, a $2,000 fine and a $100 special assessment. The district court applied an upward departure based on Chapter 5 of the Sentencing Guidelines resulting in a Guidelines calculation that was 33 months greater than the applicable Guidelines range for the offense of conviction. Nelson argues on appeal that the

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

sentence is procedurally and substantively unreasonable. Upon review of the record and applicable law, we find that the district court did not err when it sentenced Nelson and will AFFIRM the sentence.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On February 16, 2005, Nelson attempted to purchase a firearm from Robert Cook and completed ATF Form 4473. Nelson was denied by the National Instant Criminal Background System because he was under indictment for a felony. Despite knowing that he was prohibited from purchasing and acquiring firearms, Cook transferred the gun to Nelson. Since 2005, Nelson has enlisted various individuals to straw purchase firearms on his behalf. He then sold the firearms at gun shows and out of his car. Undercover agents conducted several transactions with Nelson and purchased 26 firearms, 9 of which were traced to Cook as the original firearms dealer.

On November 8, 2005, Nelson met with a confidential informant who told Nelson that he had prior felony convictions. Despite knowing that he was a convicted felon, the next day Nelson sold firearms to the informant. Nelson made three other sales to the informant in December 2005, and on December 28, 2005, Nelson made arrangements with the informant for the sale of $1,655 of firearms. When Nelson arrived at the agreed sale location, ATF agents approached him. During the transactions with the confidential informant, Nelson wore a bulletproof vest. At the last sale, ATF agents found a loaded, nine-millimeter, semi-automatic pistol on the floor of his car on the driver's side, a loaded, .38 caliber revolver on the front passenger's seat of his car and five more firearms in the car.

On August 8, 2006, pursuant to a plea agreement, Nelson entered a plea of guilty to making a false statement in the acquisition of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

2

Nelson was scheduled for sentencing on February 1, 2007. The plea agreement provided that the base offense level was at least 12 and that the government reserved the right to argue that the offense involved a machine gun which would result in a range 6 levels higher. It also provided that the offense involved over 200 firearms, the highest number contemplated by the sentencing guidelines, which resulted in a 10-level increase. The plea agreement also provided for a four-level increase because Nelson possessed and transferred firearms with reason to believe that they would be used or possessed in connection with another felony offense and a four-level increase for Nelson's aggravating role in the offense. Prior to the sentencing, the Probation Office completed a presentence investigation report ("PIR"). In the PIR, the Probation Office determined Nelson's total offense level was 33 and recommended a sentence of 120 months. This calculation was based on a base offense level of 18 rather than 12 because the STEN rifle recovered during the search of Nelson's residence was a machine gun. While the Guidelines calculated in the PIR provide for a sentence of 135 to 168 months, the Probation Office recommended a sentence of 120 months because 120 months is the statutory maximum for this offense of conviction. Nelson objected to the PIR on three grounds. At the initial sentencing hearing, Nelson withdrew two of his objections and the district court overruled the third objection. None of those objections is relevant to this appeal. The district court also questioned at the initial hearing whether relevant conduct for Nelson's offense of conviction would encompass his possession of a machine gun. Upon posing this question, the district court continued the hearing to allow the parties adequate opportunity to consider its question.

Prior to the second sentencing hearing, the district court gave notice to the parties that if the machine gun enhancement did not apply, it would consider an upward departure or variance based on U.S.S.G. § 5K2.2 for significant physical injury, § 5K2.6 for creating an unusually dangerous

3

situation and/or § 5K2.14 for significantly endangering public safety and 18 U.S.C. §§ 3553(a)(1) and 3553(a)(2)(B) for the "number of guns involved in the offense of convictions, the danger to the community and the extent and scope of the crime." JA 21. At the second hearing, the Government filed its Exhibit 1 listing the firearms purchased and/or sold by Nelson and information on where those weapons were subsequently found. The Government's Exhibit 1 was admitted without objection and Nelson admitted the facts contained therein. JA 75-76.

At the hearing, the parties informed the district court that they agreed that the machine gun enhancement did not apply and the district court heard argument on the appropriateness of upward departures pursuant to §§ 5K2.2, 5K2.6 and 5K2.14. After hearing argument, the district court determined that the first two sections of Chapter 5 should not be applied but found that an upward departure pursuant to § 5K2.14 was appropriate because Nelson's crime significantly endangered public health and safety. In support of this conclusion, the district court explained that the Government's Exhibit 1:

> [I]ndicates . . . the risk to the public was substantial and actual, not just a risk but there were actually people injured, and that all of this was something that was predictable given the method of sale, given the number of guns; and while I wouldn't base the enhancement on this alone, the bulletproof vest worn by the defendant is another indication that he even knew that the matters he was involved in created a danger to public safety.

JA 86-87. Based on Chapter 5 of the Guidelines, the district court departed by adding 6 points which resulted in an adjusted offense level of 33. The Guidelines imprisonment range for an offense level of 33 is 135 to 168 months. Since a statutory maximum applied, however, the range could not exceed the maximum of 120 months.

Noting that the Guidelines are advisory, the district court heard arguments from the parties

regarding the factors listed in 18 U.S.C. § 3553(a) and discussed them in its ruling. The district court reviewed the nature and circumstances of the offense, noting that while there was a one-count charge, there were in excess of 200 guns, each of which would essentially represent an additional crime. JA 98. Further the district court noted that while the charged offense was completed when Nelson completed the purchase of the firearm, Nelson continued committing crimes when he sold the guns to others, including known felons.

The district court also reviewed Nelson's history and character noting that it "cut both ways." The district court found that Nelson should not be entitled to a pass for his service as a police officer but that he should not be more severely punished either. JA 98-99. The district court looked at the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and provide just punishment for the offense and found that the offense of conviction was most serious. JA 99. The court also looked at whether the sentence provided adequate deterrence to criminal conduct and noted that there needed to be deterrence with regard to further criminal conduct by Nelson and others. JA 99. The district court then considered protecting the public from further crimes by Nelson and found that when Nelson was not in custody, he presented a great risk to the public with regard to placing firearms in commerce. JA 99. The district court reviewed Nelson's need for education or vocational training, medical care or other correctional treatment, finding that the Bureau of Prisons can provide for those conditions. JA 99-100. The district court considered the types of sentences available and the range for the particular crime along with policy statements issued by the Sentencing Commission. JA 100. Finally, the court reviewed the need to avoid unwarranted sentencing disparities with defendants with similar records who have been found guilty of similar conduct, noting that the case seemed to turn on what sentence Cook, a co-defendant, was

5

to receive from the court. JA 100-101.

After discussing all of the § 3553(a) factors, the district court found that the aggravated nature of the offenses, the number of sales, the types of sales, the defendant's past, and the fact that Nelson wore a bulletproof vest (indicating that he knew of the dangerousness of the criminal conduct that he was engaged in) outweighed the mitigating factors of Nelson being a first-time offender, not having an extensive criminal past and not going to trial. JA 101. Accordingly, the district court sentenced Nelson to the statutory maximum of 120 months. JA 101.

## II.     JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction of this matter pursuant to 18 U.S.C. § 3231. This court has jurisdiction over Nelson's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "Courts of appeals must review all sentences inside, just outside, or significantly outside the Guidelines range under a deferential abuse-of-discretion standard." *Gall v. United States*, — U.S. —, 128 S.Ct. 586, 591, 597, 169 L. Ed. 2d 445 (2007). Abuse of discretion occurs when the district court relies on clearly erroneous findings of fact, improperly applies the governing law or uses an erroneous legal standard. *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003).

An appellate court must follow a two-step analysis to determine whether the sentencing court abused its discretion in imposing a sentence. First, the reviewing court must ensure that the district court committed no procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range. Second, if the district court's sentencing decision is procedurally sound, the appellate court considers the

6

substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. The appellate court should consider the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness; however, a presumption of unreasonableness does not apply if the sentence is outside of the Guidelines range. The appellate court may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the sentencing court. *Gall*, 128 S.Ct. at 597. *See also United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008); *United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008).

## III.    DISCUSSION

Nelson argues on appeal that his sentence is both procedurally and substantively unreasonable. For the reasons set forth below, we disagree.

### A.      Procedural Challenges

The district court determined that Nelson's applicable Guidelines range for the one-count indictment was 70 to 87 months of imprisonment, but concluded that a departure pursuant to § 5K2.14 applied, taking the range to 135 to 168 months.[1] The district court noted the statutory maximum of 120 months would supercede the higher calculated range. After it calculated the

---

[1] This determination is a "Guideline departure" rather than a variance as it was based on Chapter 5 of the Sentencing Guidelines and not on the § 3553(a) factors. *See United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006) (discussing the difference between a departure and a variance).

Guidelines range, the district court discussed the § 3553(a) factors and announced a sentence of 120 months, determining that the mitigating factors were outweighed.

Nelson's procedural objection is that the Guidelines calculation that the district court employed was improper. Specifically, Nelson objects to the enhancement of his sentence pursuant to U.S.S.G. § 5K2.14 arguing that the upward departure amounts to improper double counting because the danger to public safety alleged in the case was already accounted for in the Guidelines provisions related to the offense of conviction.

The Guidelines provisions related to the offense of conviction provide for punishment for making a false statement in the acquisition of a firearm and provide for increases in levels for the total number of firearms involved in the offense and for possession of firearms that are used in connection with other felony offenses by the defendant or that are transferred or possessed with knowledge that they will be used in connection with a felony offense. Both of these increases were applied without objection resulting in an initial range under the Guidelines of 70-87 months, which the district court properly acknowledged.

Section 5K2.14, however, provides that a sentencing court may increase the range "to reflect the nature and circumstances of the offense." The departure is appropriate if "national security, public health, or safety was significantly endangered." *Id.* The district court distinguished the offense of conviction, which had to do with obtaining firearms Nelson was not permitted to possess based on false information given by Nelson, and Nelson's additional conduct. The district court noted that more than 200 firearms were involved in the offense and found that although Nelson completed the charged offense when he received the firearms, he continued beyond that offense with the sale of weapons to the confidential informant whom Nelson knew to be a convicted felon. The

8

Government's Exhibit 1 and Nelson wearing a bulletproof vest during the transaction with the confidential informant, moreover, provide the basis for the departure pursuant to § 5K2.14 as these facts demonstrate "the risk to the public was substantial and actual" and that such risk/danger was "predictable." Additionally, while the district court did not specifically recite these facts, the record before the district court reflects that Nelson conducted multiple transactions with the informant and at the last transaction Nelson carried loaded firearms in his car. These are legitimate justifications for applying the departure.[2] Accordingly, we find that the district court did not abuse its discretion in departing upward under § 5K2.14.

Nelson also argues that the district court did not consider certain § 3553(a) factors when it sentenced him. While he classifies this argument as a "substantive" challenge, it is more correctly classified as "procedural" because Nelson is arguing that the district court did not follow proper procedure when it failed to consider one of the factors. Specifically, Nelson argues that the court failed to consider his status as a police officer as a mitigating factor as such status subjects him to a greater risk of harm while incarcerated. The district court specifically considered Nelson's status as a former police officer and found that it "cut both ways." JA 98. The district court is not required to consider whether he is at a greater risk for harm while incarcerated and there is no evidence in the

---

[2] Under U.S.S.G. § 5K1.0(a)(3), "[a] departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense." Thus, while the district court departed for reasons separate from the considerations of the Guidelines provisions related to the offense of conviction, a further consideration of factors used to determine the Guidelines was appropriate in the departure context if the case fell within § 5K2.0(a)(3). Nelson's double-counting argument both mischaracterizes the basis for departure here and wrongly assumes the impermissibility of double counting in this context.

9

record that Nelson would be at any greater risk of any supposed danger if he is incarcerated 70 months or 120 months. Moreover, defense counsel did not raise this issue at the hearing. It is not incumbent on the district court to raise every conceivably relevant issue on its own initiative. *See Gall*, 128 S.Ct. at 599.

We find that the district court committed no procedural errors. As explained *supra*, the district court properly calculated the Guidelines range and applied the departure. It also allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered the § 3553(a) factors, acknowledged the advisory nature of the Guidelines, did not select erroneous facts and thoroughly documented its reasoning for the selected sentence, including the upward departure.

### B. Substantive Challenges

Nelson argues that the sentence is substantively unreasonable because (1) it was based on an impermissible Guidelines calculation and (2) the court gave unreasonable weight to certain § 3553(a) factors. While the procedural error review is abuse-of-discretion *per se*, the substantive review is "far more ambiguous – it is an error so serious that the decision is not entitled to deference, just as if the court had relied on a clearly erroneous finding of fact, clearly misapplied the law or applied the wrong law." *United States v. Funk*, 534 F.3d 522, 526 (6th Cir. 2008) (citing *Lineback*, 330 F.3d at 443). The reviewing court must also be sure to grant the appropriate level of deference to the district court's decision. If it is an atypical case, outside the Guidelines "heartland" of cases, the district court's decision is entitled to the "greatest respect." *Id.* If it is a "mine-run case," however, it warrants a closer review. *Id.* (citing *Kimbrough v. United States*, 552 U.S. –, 128 S.Ct. 558, 575, 169 L.Ed.2d 481 (2007)). "*Gall* made clear that even a significant departure could be warranted so

10

long as the sentencing court, '[a]fter settling on the appropriate sentence, . . . adequately explain[s] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Erpenbeck*, 532 F.3d at 438 (quoting *Gall*, 128 S.Ct. at 597).

Nelson asserts that his sentence is substantively unreasonable because the district court improperly relied on a Guidelines departure pursuant to § 5K2.14. "The Guidelines policy statement on departures, however, makes clear that departures are discretionary and a sentencing court 'may impose a sentence outside the range established by the applicable' Guidelines when there are circumstances of a kind or degree that are 'not adequately taken into consideration' under the Guidelines." *Erpenbeck*, 532 F.3d at 439 (quoting U.S.S.G. § 5K2.0).

We conclude that the district court's application of § 5K2.14 was not substantively unreasonable. As discussed *supra* this section allows departure when "national security, public health, or safety was significantly endangered." The district court's discussion details why it found these requirements were met and the district court carefully explained the grounds for applying the enhancement. Giving due deference to the district court's reasoned decision, we cannot say that this application was an abuse of discretion.

Nelson also argues that the district court gave "unreasonable" weight to certain § 3553(a) factors. We find that the court carefully balanced the factors and did not abuse its discretion in doing so. From the district court's detailed discussion of the facts specific to this case, we find it clear that the district court considered all the concerns embodied in § 3553 and simply determined that the departure pursuant to § 5K2.14 was appropriate.

Additionally, Nelson argues that the sentence is unreasonable because the court did not give adequate consideration to the factor listed in § 3553(a)(6) - disparity in sentences among defendants

11

convicted of similar crimes. First, Nelson argues that his sentence is unreasonable because one of his co-defendants, Cook, who was in front of a different district judge, received a lower sentence. "'Subsection 3553(a)(6) is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct.' This factor is designed to 'ensure nationally uniform sentences among like offenders.'" *United States v. Houston*, 529 F.3d 743, (6th Cir. 2008) (quoting *United States v. Simmons*, 501 F.3d 620, 626 (6th Cir. 2007) (internal citations omitted)). While this factor is concerned with national disparities, it is not inappropriate for the sentencing court to consider disparities between the sentences of co-defendants as the district court considered in this case.

Nelson argues that the district court was given inaccurate information about Cook's sentence and, that, if the district court had accurate information, it might have altered its ruling. We find that the district court did not have inaccurate information before it. At the second sentencing hearing, the district court discussed the chance that Cook would receive a lesser sentence. The district court was informed that Cook was "potentially looking at a maximum of 36 months." JA 91. This was represented as the *maximum* that Cook would receive, not a minimum or a definite sentence. The district court reasoned that Cook receiving a lesser sentence would not create an unwarranted disparity because Cook merited a downward departure for providing substantial assistance in the investigation and prosecution of others, Nelson received more profit from the transactions and Nelson, as a police officer, had specialized knowledge of firearms and the laws governing them. We find that the district court considered the disparity factor.

In his reply brief Nelson, for the first time on appeal, argues that the sentencing court failed to consider the disparity between his sentence and other defendants across the nation. An appeals

court will generally not hear issues raised for the first time in a reply brief. *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001). This Circuit has been clear that an appellant cannot raise new issues in a reply brief and can only respond to arguments made the first time in the appellee's brief. Nonetheless, we find that the district court "correctly calculated and carefully reviewed the Guidelines range" thereby giving "significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 128 S.Ct. at 599. Giving appropriate deference to the district court's determination, we cannot say that the district court failed to consider any potential national disparity.

## IV. CONCLUSION

Accordingly, the district court did not err in sentencing Nelson, and the decision of the district court is AFFIRMED.